

**FILED**
**OCTOBER 5, 2021**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) | |
| | ) | No.  35657-4-III |
| SAMUEL LEE BROWN, | ) | |
| | ) | |
| Petitioner. | ) | UNPUBLISHED OPINION |
| | ) | |

SIDDOWAY, A.C.J. — Samuel Brown seeks relief from personal restraint in the form of a 264-month sentence imposed for his conviction of a first degree murder committed when he was 17 years old.  He seeks resentencing in light of the holding in *State v. Houston-Sconiers*, 188 Wn.2d 1, 391 P.3d 409 (2017), that the Eighth Amendment to the United States Constitution requires trial courts to consider mitigating qualities of youth when sentencing juveniles, even in the adult criminal system, and must have discretion to impose sentences below otherwise-applicable standard ranges and enhancements.

While *Houston-Sconiers* is a significant decision, is material to Mr. Brown's sentencing and therefore applies retroactively to his collateral attack, he is unable to make the necessary showing that the court's inability to anticipate *Houston-Sconiers* actually and substantially prejudiced him.  We therefore dismiss his petition.

No. 35657-4-III
*In re Pers. Restraint of Brown*

FACTS AND PROCEDURAL BACKGROUND

In January 2002, then 17-year-old Samuel Brown killed William Porter in Mr. Porter's apartment. Mr. Brown believed Mr. Porter had stolen his cell phone and clothing. Mr. Brown later confessed that when he confronted Mr. Porter about the alleged theft, Mr. Porter attempted to defend himself by brandishing a shotgun, but Mr. Brown wrested the weapon from him. Mr. Brown then used the shotgun or a baseball bat to severely beat Mr. Porter. Mr. Brown left him for dead.

Mr. Brown admitted his crime when questioned by police. Charges against him were transferred to adult court and he pleaded guilty to first degree murder.

Based on Mr. Brown's offender score of zero, the standard sentence range for first degree murder with a deadly weapon, inclusive of the deadly weapon enhancement, was 264 to 344 months. Pursuant to a plea agreement, and with the agreement of Mr. Porter's family and law enforcement, the State recommended that the court impose a low-end sentence of 264 months. At the time the court accepted Mr. Brown's plea, it informed him that it was not bound to follow the recommendation, "which means I can do 264 months and do something else within the standard range or go outside the standard range if I find substantial, compelling reasons to do so." Report of Proceedings (RP) at 9.

Mr. Brown had waived a presentence report, but defense counsel provided the court with a 5-page report of biographical information. At the outset of sentencing, defense counsel recounted some of that history. He told the court that Mr. Brown came

2

from a "dependency background" and had "very, very little contact with his biological father." RP at 14. He described both of Mr. Brown's parents as "heavily involved in the drug culture," and said that Mr. Brown's primary parent, his mother, "was an unabashed drug user" and "not shy about using those drugs"—including intravenous drugs—"in the presence of Sam." RP at 14-15. The mother's influence led her two sons to become drug users and sellers at young ages. Mr. Brown was eventually placed in a foster home, from which he ran away at age 14. Mr. Brown's half-brother, whom defense counsel said Mr. Brown loved dearly, was murdered about a year before Mr. Brown murdered Mr. Porter.

Defense counsel stated that Mr. Brown was homeless at the time he murdered Mr. Porter, and that it was well documented that he was on drugs (Seroquel, Klonopin, and marijuana) at the time of the murder. He said the cellphone Mr. Brown mistakenly believed had been taken by Mr. Porter was one of the few material belongings that had significance to Mr. Brown, which probably contributed to Mr. Brown's tragic compulsion to get it back. He also suggested that Mr. Brown could have been acting on some "transferred anger" because he had just learned from his girlfriend that she had aborted a pregnancy with Mr. Brown's child so that she could be with another young man. RP at 18.

Defense counsel expressed his client's remorse for the tragedy he had visited on Mr. Porter and his family, and concluded,

> It is also very much a tragedy for Sam Brown and he is gonna be in prison for a long, long time and he's going into prison at a very early age and that's gonna be a difficult circumstance for him.

RP at 19. Mr. Brown then personally apologized to the friends and family of Mr. Porter who were present.

The trial court heard from Mr. Porter's sister and the prosecutor. The prosecutor said it was important to the family in agreeing to the plea deal that Mr. Brown would receive a 22-year sentence and there would be no trial or appeal.

In announcing Mr. Brown's sentence, the court began by saying it had read the summary of his history and heeded the argument of his lawyer. The court continued:

> And I don't think anyone in this room would disagree that you had a horrible life, that some of the things in this were beyond your control, that you were placed in positions and situations that you, as a child, should never have been in, that no child should have ever been in.
> I think we can all sympathize with that and understand that.

RP at 23-24. The court added that none of what had happened to Mr. Brown had been Mr. Porter's fault, however, and "you, for some reason, have taken his life." RP at 24. It stated, "I am very glad, Sir, that you stood up and apologized to these folks." *Id.*

After an exchange with Mr. Brown about the choices he would make during his time spent in prison, and the effect those choices would have on his life after prison, the trial court said:

> Mr. Brown, I think, quite frankly, at this point you are pretty lucky that [the prosecutor] and law enforcement and the family and friends have agreed to the low-end recommendation. As I told you, this is just a

4

recommendation.  I can do more than that, but because of your history and your past, I think I'm willing to go along with it.

You are getting a break, Sir.  You are getting a break that you never gave to William Porter.  So I am going to accept the recommendation.

RP at 26.  In addition to the term of total incarceration, the court sentenced Mr. Brown to 24 to 48 months of community custody and ordered substance abuse and anger management evaluations and treatment, as requested by the State.

Mr. Brown did not appeal.  His judgment and sentence became final on September 6, 2002, when it was filed.

Almost 15 years later, our high court decided *Houston-Sconiers*, in which it held that the Eighth Amendment requires courts to recognize that "'children are different.'" 188 Wn.2d at 9.  In the context of Washington's sentencing scheme, that means that sentencing courts must both consider the mitigating qualities associated with youth at sentencing and, when sentencing a juvenile who was tried as an adult, must have absolute discretion to impose sentences below ranges and enhancements that might otherwise be mandatory.  *Id.* at 21.

Relying on *Houston-Sconiers*, in October 2017 Mr. Brown filed a pro se motion in superior court for modification of his judgment and sentence.  The superior court transferred Mr. Brown's motion to this court for consideration as a personal restraint petition (PRP).  We stayed consideration of the PRP pending our Supreme Court's review of cases addressing whether *Houston-Sconiers* represented a significant and material

change in the law that requires retroactive application on collateral review. After the

Supreme Court decided that issue in companion cases in September 2020, we lifted the

stay and accepted supplemental briefing.

ANALYSIS

A Washington offender is generally barred from filing a PRP "more than one year

after [his] judgment becomes final if the judgment and sentence is valid on its face and

was rendered by a court of competent jurisdiction." RCW 10.73.090(1). "A petitioner

can overcome the one-year time bar if he can identify (1) a significant change in the law,

(2) that is material to his conviction or sentence, and (3) that applies retroactively." *In re*

*Pers. Restraint of Meippen*, 193 Wn.2d 310, 315, 440 P.3d 978 (2019); RCW

10.73.100(6). In companion decisions in September 2020, our Supreme Court held that

*Houston-Sconiers did* constitute a significant change in law, was material if a sentence

was imposed without conforming to its twin mandates, and in that event applied

retroactively on collateral review. *In re Pers. Restraint of Ali*, 196 Wn.2d 220, 247,

474 P.3d 507 (2020), *cert. denied*, 141 S. Ct. 1754 (2021); *In re Pers. Restraint of*

*Domingo-Cornelio*, 196 Wn.2d 255, 266, 474 P.3d 524 (2020), *cert. denied*, 141 S. Ct.

1753 (2021).

In sentencing Mr. Brown in 2002, the trial court had the discretion to depart from

the standard sentencing range. *Meippen*, 193 Wn.2d at 316-17 (The Sentencing Reform

Act of 1981 (SRA), ch. 9.94A RCW, "has always provided the opportunity to raise youth

for the purpose of requesting an exceptional sentence downward.") (citing *In re Pers. Restraint of Light-Roth*, 191 Wn.2d 328, 336, 422 P.3d 444 (2018)). The court recognized its discretion and defense counsel advanced Mr. Brown's youth as a sentencing consideration.

But Mr. Brown's 2002 sentence preceded key case law establishing the constitutional importance of considering brain science and developmental immaturity in imposing a sentence on a juvenile, and it cannot be said that the court complied with that mandate. *See Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005); *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010); and *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012). In particular, there is no indication that the trial court considered what are now characterized as "'hallmark features'" of youth, such as a juvenile's "'immaturity, impetuosity, and failure to appreciate risks and consequences.'" *Houston-Sconiers*, 188 Wn.2d at 23 (quoting *Miller*, 567 U.S. at 477). The decision in *Houston-Sconiers* was therefore material to Mr. Brown's sentencing and applies retroactively, thereby making his petition timely. *Ali*, 196 Wn.2d at 242; RCW 10.73.100(6).

*Actual and substantial prejudice*

In addition to timely filing his petition, a petitioner must show error and present "a threshold showing of harm" in order to obtain relief on a PRP. *Meippen*, 193 Wn.2d at 315 (citing *In re Pers. Restraint of McNeil*, 181 Wn.2d 582, 589, 334 P.3d 548 (2014)).

"These threshold requirements are justified by the court's interest in finality, economy, and integrity of the trial process and by the fact that the petitioner has already had an opportunity for judicial review." *In re Pers. Restraint of Isadore*, 151 Wn.2d 294, 298, 88 P.3d 390 (2004).

The threshold burden requires the petitioner to show by a preponderance of the evidence that he was actually and substantially prejudiced by the alleged error—in other words, that the outcome would more likely than not have been different had the alleged error not occurred. The mere possibility of a different outcome is not enough. *Meippen*, 193 Wn.2d at 315-16 (citing *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 671-72, 101 P.3d 1 (2004); *In re Pers. Restraint of Hagler*, 97 Wn.2d 818, 825, 650 P.2d 1103 (1982)). A petition that fails to make that prima facie showing of actual and substantial prejudice must be dismissed. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 17, 296 P.3d 872 (2013).[1]

---

[1] The dissent advocates applying a reasonable probability/undermined confidence standard to determine whether Mr. Brown is entitled to relief, but controlling decisions of our Supreme Court have rejected that standard for determining a right to relief in collateral attacks that are not based on ineffective assistance of counsel. *Meippen*, 193 Wn.2d at 315-16; *State v. Buckman*, 190 Wn.2d 51, 64-65, 409 P.3d 193 (2018). We are bound to follow directly controlling authority of the Supreme Court. *State v. Gore*, 101 Wn.2d 481, 487, 681 P.2d 227 (1984).

Recognizing that it must apply the actual and substantial prejudice standard, the dissent reasons that any reasonable jurist's sentence of a youthful offender should have been more lenient had the court known then what we know now, so we should presume the likelihood of a different outcome. But that, too, is irreconcilable with the controlling decision in *Meippen*, which engaged in no presumption about whether or how modern

*Ali*, *Domingo-Cornelio*, and *Meippen* are illustrative of the showing required. In *Ali*, actual and substantial prejudice was shown where the sentencing court noted for the record that it imposed the minimum sentence it had discretion to impose and made clear that the defendant's youth was its primary reason for imposing the lowest possible sentence. 196 Wn.2d at 243-44. The Supreme Court readily found it more likely than not that the judge would have imposed a lower sentence had it understood its absolute discretion. *Id.* at 244-45. In *Domingo-Cornelio*, the Supreme Court described the evidence of prejudice in *Ali* as "overwhelming." 196 Wn.2d at 267.

In *Domingo-Cornelio*, the court held that overwhelming evidence is not required, and prejudice can be shown without a sentencing court explicitly stating that it is imposing a low-end sentence on account of the defendant's youth. *Id.* at 268. Defense counsel in *Domingo-Cornelio* did not ask for an exceptional sentence and the sentencing court did not express concern about constraints on its discretion. But the trial court did impose the lowest standard range sentence in the face of a State request for a high-end sentence. *Id.* at 268. The Supreme Court held this was enough from which to find that more likely than not, Domingo-Cornelio would have received a lesser sentence had the trial court complied with *Houston-Sconiers* mandates. *Id.*

---

brain science would have affected the earlier sentencing outcome. *See Meippen*, 193 Wn.2d at 317 ("Meippen does not present any *evidence* that the trial court would have imposed a lesser sentence." (emphasis added)).

In *Meippen*, by contrast, the court noted that nothing in the record suggested the trial court would have exercised its discretion to depart from statutory sentence enhancement guidelines. 193 Wn.2d at 317. Rather, it observed, "[t]he trial court determined that Meippen's actions were cold and calculated, and it clearly intended to impose a sentence at the top of the standard range despite Meippen's youth." *Id.*

In this case, the trial court imposed a low-end sentence but it was not rejecting a State recommendation of a high-end sentence. The inference that could be drawn in *Domingo-Cornelio*—that the trial court in that case believed leniency, and perhaps even more leniency was called for—cannot be drawn. Instead, this trial court announced it was imposing a low-end sentence *based on* the State's recommendation, and to honor its, the victim's family's, and law enforcement's beneficent sentence recommendation. It heard defense argument that it should consider Mr. Brown's youth. Yet the court said nothing to suggest it wished it were able to reduce M. Brown's sentence below the mandatory minimum in light of his youth. To the contrary, it told Mr. Brown he was "pretty lucky" that the State, law enforcement, and the family were recommending a low-end sentence and because the court was "willing to go along with it," Mr. Brown was "getting a break." RP at 26.[2] The prosecutor informed the court that it was important to the victim's family that Mr. Brown serve 22 years.

---

[2] As previously observed, courts were not oblivious to youth as a basis for mitigation at the time Mr. Brown was sentenced. The SRA "has always provided the

10

No. 35657-4-III
*In re Pers. Restraint of Brown*

The sentencing record gives us no reason to believe that the outcome would have been different had the trial court considered the hallmarks of youth. The mere possibility of a different outcome is not enough.

The petition is dismissed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, A.C.J.

I CONCUR:

_____
Staab, J.

---

opportunity to raise youth for the purpose of requesting an exceptional sentence downward." *Meippen*, 193 Wn.2d at 316-17 (citing *Light-Roth*, 191 Wn.2d at 336).

11

No. 35657-4-III

FEARING, J. (dissenting) — I conclude that a resentencing court would or should lower petitioner Samuel Brown's sentence for murder committed at age seventeen. Recent case law and scientific data concerning the blameworthiness of juvenile offenders compels this conclusion. Therefore, I dissent from my astute colleagues.

Samuel Brown

Samuel Brown's personal restraint petition arises from his 2002 conviction for first degree murder. He killed William Porter on January 28, 2002.

Samuel Brown was born February 26, 1984, to Virginia Brown. He attended school through the ninth grade. He earned a GED degree. In 2000, the juvenile court convicted Brown of burglary in the second degree. He incurred no other convictions.

Samuel Brown's father abandoned him and his mother Virginia when Brown was three years old. Brown thereafter had little, to no, contact with his father.

Samuel Brown's father and Virginia Brown both participated in Spokane's illicit drug culture. His mother unashamedly intook drugs in the presence of Brown and Brown's half-brother, Carlos. The mother's conspicuous conduct resulted in Brown and Carlos commencing the drug habit before their respective teenage years. Virginia Brown eventually masterminded the two boys' selling of marijuana to their schoolmates.

During his maturing years, Samuel Brown was often within the dependency system of the State of Washington, including occasional housing in foster homes. At age fourteen, Brown escaped a foster home and returned to his mother's abode to live with her and his brother. Brown adored his brother Carlos. In 2001, Carlos was murdered. During twenty intermittent nights, Brown slept on the grave of Carlos.

In late 2001, Samuel Brown learned that his girlfriend was pregnant with his child. The girlfriend obtained an abortion. She told Brown that she underwent the abortion because she wished to be with another man.

In late 2001, Virginia Brown lost possession of her apartment because of nonpayment of rent. Samuel Brown became homeless.

In November 2001, Virginia Brown gave her son, Samuel, a cell phone. Samuel Brown lost possession of his cell phone. He mistakenly concluded that acquaintance William Porter stole the phone. When Brown killed Porter on January 28, 2002, in a dispute over the cell phone, Brown was under the influence of Seroquel, Klonopin, and marijuana.

2002 Sentencing

On September 6, 2002, Samuel Brown pled guilty, in adult court, to first degree murder. The superior court sentenced him that same day.

Samuel Brown merited an offender score of zero. The first degree murder conviction, however, carried a mandatory minimum sentence of twenty years. Brown

2

also garnered a mandatory deadly weapon sentence enhancement of two years, which,

when added to the minimum murder sentence, resulted in a standard range sentence of

264 to 344 months. At sentencing, pursuant to a plea agreement, the State asked the

superior court to impose a sentence of 264 months, the low end of the range.

During colloquy with Samuel Brown, the sentencing court informed Brown that

his standard range sentence called for 240 to 320 months in jail. In addition, the court

informed him that he faced a weapon enhancement of two years. The cautious court

noted that the State recommended a sentence of 264 months, but warned Brown that it

need not follow the recommendation:

> THE COURT: You understand, Sir, that is simply a recommendation
> at this point in time, that this Court is not bound to follow that
> recommendation, which means I can do 264 months and do something else
> within the standard range or go outside the standard range if I find
> substantial, compelling reasons to do so. Do you understand?
> THE DEFENDANT: Yes, Ma'am.

Report of Proceedings (RP) at 9. The court then added that it could not reduce the

sentence below the twenty year minimum imposed for first degree murder.

> THE COURT: Sir, this offense has a mandatory minimum sentence
> of at least 20 years confinement without any reduction being allowed by
> law. Do you understand that, Sir?
> THE DEFENDANT: Yes.

RP at 10-11.

Before sentencing Samuel Brown, the superior court commented:

3

> THE COURT: Mr. Brown, I have read the summary that has been provided to me of your history and your background and I have listened to what Mr. Fasy [defense counsel] had to say.
>
> And I don't think anyone in this room would disagree that you had a horrible life, that some of the things in this were beyond your control, that you were placed in positions and situations that you, as a child, should never have been in, that no child should have ever been in.
>
> I think we can all sympathize with that and understand that.
>
> That does not mean that what you did has any justification or reason or excuse, Sir. For all of these things that have happened to you and all these other people who have been in your life and were not in your life when they should have been, [the victim] Mr. Porter was not one of them.
>
> He didn't do anything to you. Mr. Brown, he's not responsible for your past family problems and childhood problems and drug problems. That wasn't his fault. But you, for some reason, have taken his life.
>
> I'm even more shocked, Sir, to hear that part of the problems that you have had involved the loss of your brother and how difficult that has been for you.
>
> You took his—Miss Porter's, brother and she's sitting here today, too, and she has, Sir, had a loss because of what you have done.
>
> I am very glad, Sir, that you stood up and apologized to these folks.

RP at 23-24. The superior court sentenced Samuel Brown to 264 months total incarceration time and 24 to 48 months of community custody.

## Juvenile Brain Science

In 2002, the year of Samuel Brown's sentencing, American jurisprudence treated teenage murderers the same as adult murderers. Juvenile courts rotely declined jurisdiction over a teenager accused of murder, and the adult courts prosecuted and sentenced teenagers as if adults. A fifteen-year-old, who committed a crime, was deemed as blameworthy as a fifty-year-old, who committed the same crime. *In re Boot*, 130 Wn.2d 553, 569-70, 925 P.2d 964 (1996). Not surprisingly, the State's attorney, defense

4

counsel, and the superior court never once mentioned Samuel Brown's youth or immature brain development during the 2002 sentencing hearing. Defense counsel did not seek an exceptional sentence below the standard range or below the minimum sentence as a result of Brown committing the murder at age seventeen.

Beginning in 2005, the United States Supreme Court and later the Washington Supreme Court acknowledged advances in neurological science. The United States Supreme Court thereafter issued landmark decisions, under the Eighth Amendment's cruel and unusual punishment clause, concerning juvenile offender sentencing. *Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005); *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010); *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012); and *Montgomery v. Louisiana*, 577 U.S. 190, 136 S. Ct. 718, 193 L. Ed. 2d 599 (2016). The United States high Court declared that children are "constitutionally different" from adults for purposes of sentencing. *Miller v. Alabama*, 567 U.S. 460, 471 (2012). One could read this declaration to refer to children's mental, physical, and emotional compositions differing from the rational, somatic, and psychic makeup of adults, but the Court likely intended to state that children differ from adults under the cruel and unusual punishment clause for purposes of blameworthiness for crime and for purposes of sentencing. All statements are accurate.

According to the United States Supreme Court, the cruel and unusual punishment clause demands that the penal system treat offenders under the age of eighteen

differently. Children's lack of maturity and underdeveloped sense of responsibility lead to recklessness, impulsivity, and heedless risk taking. *Miller v. Alabama*, 567 U.S. 460, 471 (2012). Children are more vulnerable to negative influence and outside pressure from family and peers, have limited control over their environments, and lack the ability to extricate themselves from horrific, crime-producing settings. *Miller v. Alabama*, 567 U.S. at 471. Adolescent brains are not yet fully mature in regions and systems related to higher order executive functions such as impulse control, planning, and risk avoidance. *Miller v. Alabama*, 567 U.S. at 475 n.5. All of these features impact a tendency to commit a crime. *Miller v. Alabama*, 567 U.S. at 473. Commonsense, parental knowledge, physical science, and social science confirm these observations. *Miller v. Alabama*, 567 U.S. at 472 n.5. Because a child's character is not as well formed as an adult's, the child's traits are less fixed, and his actions are less likely to be evidence of depravity. *Miller v. Alabama*, 567 U.S. at 471. Only a relatively small proportion of adolescents who engage in illegal activity develop entrenched patterns of problem behavior. *Roper v. Simmons*, 543 U.S. 551, 570 (2005).

Immaturity does not end at age eighteen. The parts of the brain involved in behavioral control continue to develop well into a person's 20s. *State v. O'Dell*, 183 Wn.2d 680, 692 n.5, 358 P.3d 359 (2015). The dorsal lateral prefrontal cortex, important for controlling impulses, is among the latest brain regions to mature without reaching

6

adult dimensions until the early twenties. *State v. O'Dell*, 183 Wn.2d 680, 692 n.5 (2015).

The distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes. *Miller v. Alabama*, 567 U.S. 460, 472 (2012). Deterrence supplies a flawed rationale for punishment because of juveniles' impulsivity and inability to consider the consequences of their actions. *Miller v. Alabama*, 567 U.S. at 472. Retribution's focus on blameworthiness also does not justify a lengthy sentence because juveniles have severely diminished moral culpability. *Miller v. Alabama*, 567 U.S. at 472. Incapacitation fails to justify a long sentence because adolescent development diminishes the likelihood that an offender forever will be a danger to society. *Miller v. Alabama*, 567 U.S. at 472-73.

Juvenile Sentencing

With a new understanding of juvenile brain development, the United States Supreme Court established strictures on harsh and long sentences for teenagers, even youth committing murder. The Eighth Amendment's cruel and unusual punishment clause compelled these sentencing restrictions.

Because of the constitutional nature of children, including teenagers, the United States Supreme Court, in *Miller v. Alabama*, 567 U.S. 460 (2012), mandated that a sentencer follow a process that incorporates consideration of the offender's chronological

age and its hallmark features and other mitigating features before imposing life without parole. The attended characteristics include: chronological age, immaturity, impetuosity, failure to appreciate risks and consequences, the surrounding family and home environment, the circumstances of the offense, including the extent of the offender's participation in the offense and any pressures from friends or family affecting him, the inability to deal with police officers and prosecutors, incapacity to assist an attorney in his or her defense, and the possibility of rehabilitation. *Miller v. Alabama*, 567 U.S. 460, 477 (2012). In *Montgomery v. Louisiana*, 577 U.S. 190 (2016), the high Court readdressed the subject of life without parole sentences for juvenile homicide offenders. *Montgomery* held that *Miller* applied retroactively to offenders who were juveniles when they committed their crimes. Against contentions that the *Miller* ruling only imposed a procedure for resentencing, the Court announced that *Miller* established a substantive rule that juveniles, whose crimes reflect "only transient immaturity" and who have since matured, will not be forced to serve a life without parole sentence. *Montgomery v. Louisiana*, 577 U.S. 190, 212 (2016).

Courts have expanded the application of the *Miller* factors to cases involving possible sentences other than life sentences. In Washington, even if the offender is eighteen years to some unidentified age in his or her twenties, the sentencing court must consider the youth of the offender regardless of the standard range imposed by the Sentencing Reform Act of 1981, (SRA), chapter 9.94A RCW. *State v. O'Dell*, 183

8

Wn.2d 680, 692 n.5 (2015). In such circumstances, the age of the offender can support

an exceptional sentence below the standard range applicable to an adult felony defendant.

*State v. O'Dell*, 183 Wn.2d 680, 698-99 (2015). Under the cruel and unusual punishment

clause, sentencing courts must exercise their discretion at the time of sentencing itself

with regard to the youth of the offender, regardless of what opportunities for

discretionary release may occur in the future. *Miller v. Alabama*, 567 U.S. 460, 477-83

(2012); *State v. Houston-Sconiers*, 188 Wn.2d 1, 20, 391 P.3d 409 (2017).

In *State v. Houston-Sconiers*, 188 Wn.2d 1 (2017), our Supreme Court addressed

*Miller v. Alabama*'s applicability to juvenile defendants who received lengthy mandatory

sentences attributable to firearm sentencing enhancements. The high court held that the

Eighth Amendment and *Miller* require that sentencing courts hold absolute discretion to

depart as far as desired below the otherwise applicable Sentencing Reform Act ranges

and sentencing enhancements when sentencing juveniles in adult court, regardless of how

the juvenile arrived in court. To the extent Washington sentencing statutes had been

interpreted to bar such discretion with regard to juveniles, the high court deemed the

statutes unconstitutional.

The requisite sentencing hearing for a juvenile in adult court, under Washington

jurisprudence, is no longer an ordinary sentencing proceeding. *State v. Ramos*, 187

Wn.2d 420, 443, 387 P.3d 650 (2017). *Miller v. Alabama* establishes an affirmative

requirement that courts fully explore the impact of the defendant's juvenility on the

sentence rendered. *State v. Ramos*, 187 Wn.2d 420, 443 (2017); *Aiken v. Byars*, 410 S.C. 534, 543, 765 S.E.2d 572 (2014). A court must do more than simply recite the differences between juveniles and adults and do more than render conclusory statements that the offender has not justified an exceptional downward sentence. *State v. Ramos*, 187 Wn.2d at 443. The sentencing court must thoroughly explain its reasoning, specifically considering the differences between juveniles and adults identified by the *Miller* Court and how those differences apply to the case presented. *State v. Ramos*, 187 Wn.2d at 444.

## Personal Restraint Petition

Samuel Brown filed his personal restraint petition in 2017, fifteen years after his sentencing. A Washington statute generally bars a petition filed more than one year after the petitioner's judgment and sentence becomes final. RCW 10.73.090(1). One exception to this one-year limitation period occurs when the petitioner can identify a significant change in the law material to his conviction or sentence, which change applies retroactively. RCW 10.73.100(6); *In re Personal Restraint of Meippen*, 193 Wn.2d 310, 315, 440 P.3d 978 (2019). Samuel Brown contends he fulfills this exception because *State v. Houston-Sconiers*, 188 Wn.2d 1 (2017), changed the law and the Washington Supreme Court has declared the teachings of *Houston-Sconiers* to apply retroactively. *In re Personal Restraint of Ali*, 196 Wn.2d 220, 226, 474 P.3d 507 (2020) *cert. denied* ___ U.S. ___, 141 S. Ct. 1754, 209 L. Ed. 2d 514 (2021). Both the majority and I agree.

10

State v. Houston-Sconiers, 188 Wn.2d 1 (2017) announced a new rule regarding juvenile sentencing with two distinct and imperative components. First, the sentencing court "*must* consider mitigating qualities of youth at sentencing." *State v. Houston-Sconiers*, 188 Wn.2d 1, 21 (2017) (emphasis added). These mitigating qualities include a juvenile defendant's age, immaturity, impetuosity, and failure to appreciate risks and consequences. *State v. Houston-Sconiers*, 188 Wn.2d at 21. Second, the sentencing court "*must* have discretion to impose any sentence below the otherwise applicable" sentencing range and sentencing enhancement. *State v. Houston-Sconiers*, 188 Wn.2d at 21 (emphasis added).

In *In re Personal Restraint of Ali*, 196 Wn.2d 220 (2020), the Washington high court held that both components of the *State v. Houston-Sconiers* ruling apply retroactively to offenders such as Samuel Brown, sentenced prior to issuance of the Supreme Court's decision in *Houston-Sconiers*. *Houston-Sconiers* created a new constitutional rule material to an offender's sentencing. *Houston-Sconiers* followed *Miller v. Alabama* and its progeny, which centered on the substantive guaranty of the Eighth Amendment: punishment proportionate to culpability. To that end, the court must, on a showing of prejudice, resentence the offender and, on resentencing, consider all mitigating circumstances related to the defendant's youth.

Unsurprisingly, the 2002 sentencing record of Samuel Brown shows the trial court did not predict the new rule established by *State v. Houston-Sconiers*. The sentencing

court made no mention of juvenile brain science and development. The sentencing court made no reference to the immaturity and impetuosity of a seventeen year old. Nor did defense counsel assert any need for the sentencing court to address these factors. Defense counsel never asked for an exceptional downward sentence. Samuel Brown's sentencing did not meet the constitutional requirements of *Houston-Sconiers*.

## Actual and Substantial Prejudice

Our ruling applying *State v. Houston-Sconiers* retroactively to Samuel Brown's personal restraint petition does not necessarily bring success to Brown. To be awarded relief, the petitioner must also show, by a preponderance of evidence, actual and substantial prejudice by the constitutional error. *In re Personal Restraint of Domingo-Cornelio*, 196 Wn.2d 255, 268, 474 P.3d 524 (2020), *cert. denied* ___ U.S. ___, 141 S. Ct. 1753, 209 L. Ed. 2d 515 (2021). Brown must show the outcome of his sentencing more likely than not would have been shorter had the alleged error not occurred. *In re Personal Restraint of Meippen*, 193 Wn.2d 310, 316 (2019).

Under other settings of constitutional violations, such as ineffective assistance of counsel, the defendant, to establish prejudice, must "prove that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). This principle suggests that the accused must establish that he likely would have been acquitted. Nevertheless, the standard is lower than a preponderance standard. *State v.*

*Estes*, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017). A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *State v. Gregory*, 192 Wn.2d 1, 22, 427 P.3d 621 (2018) (quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). A court could lack confidence in the outcome without concluding that the defendant likely would have been acquitted without the constitutional breach.

Contrary to other constitutional claims, no Washington court has modified the standard applied to personal restraint petition challenges to sentencing by stating that the standard is less than a preponderance. No court has ruled that the reviewing court need only maintain an undermined confidence in whether the sentencing court would have imposed the same sentence. I discern no valid reason to decline to impose the undermined confidence standard in the setting of cruel and unusual punishment clause challenges to lengthy juvenile sentences. The cruel and unusual punishment clause holds as much importance as other constitutional provisions. Regardless, I need not employ the lesser standard to rule in Samuel Brown's favor.

In *State v. Houston-Sconiers*, 188 Wn.2d 1 (2017), the Washington Supreme Court, without extensive analysis, held that two offenders suffered prejudice even though defense counsel at sentencing argued mitigating factors based on youth. The Washington Supreme Court remanded the two combined cases for resentencing.

In *In re Personal Restraint of Ali*, 196 Wn.2d 220 (2020), the Washington

Supreme Court held that the offender demonstrated actual and substantial prejudice.

Seventeen-year-old Said Ali committed numerous robberies and a first degree assault.

The State requested a high end standard sentence of 390 months. Ali's defense counsel

requested an exceptional downward sentence of ten years. Counsel emphasized that Ali

was a young adolescent at the time of the crimes and little would be gained by crushing

his hope and spirit by sending him away for two lifetimes, which the State sought. Ali

presented letters and testimony from members of his community, who referenced his age,

inexperience, and susceptibility to peer pressure. The sentencing judge ruled that she

lacked the discretion to impose an exceptional sentence downward based on those

mitigating factors.

In *In re Personal Restraint of Ali*, the Washington Supreme Court held that Ali

had demonstrated prejudice by a preponderance of the evidence. The sentencing judge

imposed 312 months, the minimum sentence she had discretion to impose under the SRA.

The high court remanded the case for resentencing. In *In re Personal Restraint of

Domingo-Cornelio*, 196 Wn.2d 255 (2020), the Supreme Court also remanded for

resentencing because the sentencing judge had ordered the lowest possible sentence

within the standard range.

I contrast *State v. Houston-Sconiers* and *Personal Restraint of Ali* with *In re

Personal Restraint of Meippen*, 193 Wn.2d 310 (2019). In the latter case, the state high

14

court held that sixteen-year-old Time Meippen failed to show the likelihood of a lower

sentence because the sentencing court imposed a sentence in the high-end of the standard

range despite recognizing the court had discretion to order a lower sentence within the

standard range. Defense counsel argued for a sentence in the low-end of the standard

range because the youth's age prevented him from understanding the full nature of his

robbing a store and shooting the clerk. The sentencing court deemed Meippen's actions

to be cold and calculated.

The ruling in *In re Personal Restraint of Meippen* should be criticized. Although

Time Meippen's sentencing court held discretion to impose a lower sentence and instead

imposed a higher sentence in the standard range, the sentencing court still lacked any

knowledge about juvenile brain development studies that scientists released only after

Meippen's sentencing. Reviewing the brain studies should have significantly impacted

the sentencing judge if she had sentenced Meippen years later. Just because the

sentencing judge imposed a high sentence, despite discretion to the contrary, does not

mean the court would not have significantly shortened the sentence after scientific

enlightenment, after knowing it must consider the immaturity of the teenager when

sentencing, and after understanding it must exercise discretion in possibly granting an

exceptional downward sentence. A reading of recent case law could have and should

have convinced the sentencing judge that it possessed complete discretion in sentencing

based on new data of teenage brain development. On resentencing, the judge would have

had available for the first time instructions from the United States Supreme Court and Washington Supreme Court from the last two decades that impose a mandatory duty on the sentencing court to seriously consider the lack of maturity of a seventeen year old when sentencing.

The Washington Supreme Court's summary dismissal of Time Meippen's petition based on a high sentence and based on scattered comments from the sentencing judge, downplays the important lessons taught by United States Supreme Court in *Roper v. Simmons*, 543 U.S. 551 (2005); *Graham v. Florida*, 560 U.S. 48 (2010); *Miller v. Alabama*, 567 U.S. 460 (2012); and *Montgomery v. Louisiana*, 577 U.S. 190 (2016). The ruling against Meippen curbs the imperative created by the United States Supreme Court and the Washington Supreme Court to seriously consider the youth of the offender. The denial of Meippen's petition demeans the ability of Washington's astute superior court judges to change their minds about sentencing when faced with compelling science data and instructions from higher courts. The teachings of *Miller v. Alabama* and its United States Supreme Court and Washington Supreme Court progeny did not simply demand quantitatively changed sentences by a few months or a few years. The decisions reshaped the whole landscape of juvenile sentencing and demanded an entirely new approach to sentencing. I underwent a change in attitude toward juvenile sentencing when studying the scientific literature and reading the United States Supreme Court decisions.

16

No. 35657-4-III
*In re Personal Restraint of Brown* – dissent

Under Washington case law, a reviewing court decides whether the initial sentence would have been lower by attempting to divine what the earlier sentencing judge would do. *In re Personal Restraint of Meippen*, 193 Wn.2d 310, 316, (2019). We do not resolve the petition by asking what the typical judge would do. Nor do we ask what the resentencing judge *should* do, as opposed to what the judge *would* likely do. One might wonder if the reviewing court should consider the reputation of the sentencing judge as a harsh or lenient sentencer, when the appeals court grants or denies the petition for resentencing. More importantly in this petition, one might wonder whether we should speculate what Samuel Brown's initial sentencing judge would do when the judge has been retired for years and any resentencing will proceed before another judge.

To repeat, the Washington Supreme Court in *In re Personal Restraint of Ali*, 196 Wn.2d 220 (2020), *In re Personal Restraint of  Domingo-Cornelio*, 196 Wn.2d 255 (2020), and *In re Personal Restraint of Meippen*, 193 Wn.2d 310 (2019), directed this court to serve as a mind reader of a superior court judge who sentenced the offender often decades earlier by reading the transcript of the hearing. We attempt to determine if the court would have imposed a shorter sentence without any inkling of how recent case law and the illuminating new studies of teenage brain development would impact the thinking of the sentencing court.

The State of Washington contends that Samuel Brown does not meet the preponderance of evidence burden of showing actual and substantial prejudice by the

17

2002 sentencing court's constitutional error. According to the State, the sentencing court recognized it possessed discretion to impose an exceptional sentence downward. The sentencing judge informed Brown he was lucky that the State recommended a low end sentence. According to the State, the sentencing court's comments illustrate that the court considered Brown's young age when sentencing him.

I disagree. The sentencing court warned Samuel Brown that it could impose a sentence outside the standard range if it found compelling circumstances. In context, this warning only recognized that the court could exceed the standard range, not deceed the range. A court does not warn an offender that the court could impose a sentence below the standard range or below the State's recommended sentence because such a ruling by the court would benefit, not harm, the offender. After warning Samuel Brown that it could impose a sentence above the standard range or a sentence higher than the State's recommended sentence, the sentencing judge informed Brown that she must impose a minimum sentence of twenty years for first degree murder and an additional minimum of two years for the weapon enhancement. These latter remarks establish that the sentencing court did not recognize any discretion to impose a downward exceptional sentence. The sentencing judge would not consider Brown's immaturity and impetuosity in order to lower the sentence below the twenty-two years combined mandatory sentence.

Those facts critical to the Washington Supreme Court's denial of Time Meppien's petition are absent in Samuel Brown's sentencing. Samuel Brown's defense counsel

18

never argued mitigating factors based on youth. Brown's sentencing court did not impose a sentence high within the standard range. In turn, facts critical to the ruling in *Personal Restraint of Ali* are present in Samuel Brown's personal restraint petition. Brown's sentencing court ordered the lowest possible sentence that it believed it could impose based on the statutory minimum sentence for first degree murder and the statutory mandatory firearm enhancements.

Any resentencing judge likely will and certainly should lower the sentence of Samuel Brown after performing its constitutional duty to thoroughly consider the immaturity, impetuosity, recklessness, and tragic background of the seventeen-year-old Brown. If Samuel Brown's circumstances do not call for an exceptionally downward sentence, perhaps no case ever will.

As a child of privilege with loving and attentive parents, I can only faintly image the horrors Samuel Brown encountered as a child and teenager. Brown lacked a father figure. Brown's mother introduced him to and trained him to participate in Spokane's drug culture. Brown often lived in the alternate, sometimes dystopian, world of foster care and sometimes subsisted in homelessness. Sixto Cancel, *Our Foster Care System is Broken*, N.Y. TIMES, Sept. 17, 2021 at A23. His brother recently was murdered, and his girlfriend told him she had aborted his child. Brown operated under the influence of illicit drugs at the time of his murder. He killed William Porter impulsively over a silly dispute about a cell phone.

In human terms, Samuel Brown deserves a lengthy, if not lifetime sentence, for the killing of another human being. But the cruel and unusual punishment clause compels society to act nobly and with mercy. A lengthy sentence imposed on Brown does not serve the purposes behind punishment of crime.

Samuel Brown deserves resentencing. At the very least, this court should order a reference hearing, during which the superior court should entertain evidence as to the immaturity and impulsiveness of Brown at the time of the murder. *In re Personal Restraint of Meippen*, 193 Wn.2d 310, 329 (2019) (Wiggins, J., dissenting).

I respectfully dissent:

_____
Fearing, J.